NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued September 28, 2007
Decided October 31, 2007

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-4217

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States |
| *Plaintiff-Appellee,* | District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 04 CR 223 |
| MARTA RUCINSKI, | |
| *Defendant-Appellant.* | Robert W. Gettleman, *Judge.* |

**O R D E R**

Marta Rucinski was convicted, after a jury trial, on a charge that she possessed methamphetamine with intent to distribute.  She appeals.  We affirm her conviction.

Rucinski is a methamphetamine user and dealer.  Unfortunately, she was obtaining her supplies from a person who was previously caught by the Drug Enforcement Administration.  That person, as is fairly typical in cases like this, cooperated with the government.  Rucinski had an ongoing relationship with her supplier, Brad Fisher.  Her first buy from him was a two-ounce quantity.  Almost immediately, Fisher began to front her half pounds at a time.  She paid him for one delivery when she received the next half pound.  There were five half-pound

transactions.  Then, in a transaction monitored by the DEA after Fisher was caught, Rucinski received what she thought was a pound of methamphetamine. She gave him $4,000 in partial payment for a past delivery and partly for the new supply.  She agreed to pay her balance, at the going price of $12,000 per pound, in two days.  After the deal went down, Rucinski was arrested as she left Fisher's vehicle.

After her arrest, Rucinski also agreed to cooperate with the government and, in grand jury testimony, provided information about an ecstasy distribution ring. She confessed to being an ecstasy and cocaine dealer.  In addition, she told Dr. Carl Wahlstrom, an expert she called to testify at trial about her various psychological disorders, that she was selling methamphetamine so that she would be able to get her personal supply free.  Wahlstrom determined that Rucinski intended to sell at least some of the methamphetamine she received from Fisher.

Rucinski was indicted for

> knowingly and intentionally attempt[ing] to possess with
> intent to distribute a controlled substance, namely, in
> excess of 350 grams of methamphetamine, a schedule II
> Controlled Substance, in violation of Title 21, United
> States Code, Section 841(a)(1) . . . [and] Section 846.

As we said, a jury found her guilty as charged.

In this appeal, Rucinski contends that because of the reference to 350 grams of methamphetamine[1] in the indictment, the jury should have been instructed that the government was required to prove that she intended to distribute an amount in excess of 350 grams.  Her claim is that when the government includes the drug quantity in the indictment, it becomes an element of the offense.  She says the district judge constructively amended the indictment by not giving such an instruction, all in violation of her Fifth Amendment rights.  Growing out of this argument is her claim that the government improperly told the jury it did not have to prove the amount.  Rucinski is wrong on the law.

The elements of the charged offense are that the defendant knowingly and intentionally attempted to possess a controlled substance and that the defendant attempted to posses it with the intent to deliver it to another person.  The jury was

---

[1] A pound of methamphetamine weighs approximately 450 grams.

instructed as to those elements.  Not only is the quantity of drugs not an element of the offense, under § 841(a) a defendant can be found guilty if it is shown that she intended to distribute a "measurable amount" of a controlled substance.  United States v. Macedo, 406 F.3d 778 (7th Cir. 2005).  The principle is not affected by the inclusion of a specified drug quantity in an indictment.  Id.

Nor is it affected by Apprendi v. New Jersey, 530 U.S. 466 (2000), which established that any fact, other than a prior conviction, that increases a penalty beyond the statutory maximum must be proved beyond a reasonable doubt. Following Apprendi, it is true that the amount, while not important under § 841(a), becomes important under § 841(b), which sets out maximum penalties for various amounts of various drugs.  We have said that Apprendi "strongly affects how § 841 is implemented."  In a post-Apprendi world, the "indictment should specify, and the trier of fact must be instructed to determine, not only the elements of the offense, which appear in § 841(a), but also the events listed in § 841(b) on which the prosecutor relies to establish the maximum sentence."  United States v. Brough, 243 F.3d 1078, 1080 (7th Cir. 2001).  But even if no amount is specified, a defendant would still face a penalty, if only the least serious one-year penalty.  Id.  In other words, the amount, which we have said should be specified in the indictment, affects sentencing issues, not guilt.  There was no error in the jury instruction.

Even when warned by the district judge of the folly of her approach, Rucinski waived her right, derived from Apprendi, to have the jury find the drug amount for sentencing purposes.  In fact, she conceded that she attempted to possess 450 grams, not just 350.  Her trial strategy seemed to be  to claim that she had the methamphetamine for personal use with no intention to distribute any of it, or at least very, very little of it.  She says she then could not be found guilty.  The all-or-nothing approach did not work because, as we have indicated, it was based on an incorrect understanding of the law.

It follows, then, that there was no error in the prosecutor's statement that the government was not required to prove the exact drug amount, nor was there any error in the jury instructions on the point.

Accordingly, the judgment of conviction is AFFIRMED.